**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MARC BRU,<br><br>　　　　　Defendant. | Case: 1:26–mc–00044<br>Assigned To : Boasberg, James E.<br>Assign. Date : 4/8/2026<br>Description: Misc.<br><br>Case No. 21-cr-352 (JEB) |

**APPLICATION OF NATIONAL PUBLIC RADIO, INC.
FOR ACCESS TO AND PERMISSION TO DISSEMINATE CERTAIN
<u>EXHIBITS PRESENTED BY THE UNITED STATES AT TRIAL</u>**

1.　　Pursuant to Local Criminal Rule 57.6, applicant National Public Radio, Inc. ("NPR") respectfully seeks access to certain exhibits previously presented by the United States (the "Government") at the trial in this matter, along with permission to copy and disseminate such exhibits.

2.　　Specifically, NPR seeks access and permission to disseminate the following 63 exhibits presented by the Government at trial:

- Exhibit 101 (Defendant Entering Upper West Terrace Door)
- Exhibit 102 (Defendant in Rotunda)
- Exhibit 103 (Defendant near Interior Rotunda Door)
- Exhibit 104 (Defendant on Gallery Stairs)
- Exhibit 105 (Defendant in East Corridor)
- Exhibit 106 (Defendant Outside of Senate Gallery SE (Entrance))
- Exhibit 107 (Defendant Outside of Senate Gallery SE (Exit))
- Exhibit 108 (Defendant in Ohio Clock Corridor)
- Exhibit 109 (Defendant Near Senate Chamber)
- Exhibit 110 (Defendant Exiting U.S. Capitol)
- Exhibit 401 (MPD Officer Laurore BWC (West Plaza))
- Exhibit 402 (MPD Officer Laurore BWC – Still Photo (West Plaza))
- Exhibit 403 (MPD Officer Harrington BWC (West Plaza))
- Exhibit 501 (Defendant on West Plaza (Video – Twitter))

1



RECEIVED

APR 08 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

- Exhibit 502 (Defendant on West Plaza (Video – Julio Cortez Instagram))
- Exhibit 503 (Defendant on West Plaza (Video – Tatum Report))
- Exhibit 504 (Defendant on West Plaza (Video – Youtube))
- Exhibit 505 (Defendant Walking to U.S. Capitol (Photo – Getty))
- Exhibit 507 (Defendant Entering Upper West Terrace Door (GOPR0776))
- Exhibit 701 (Defendant on West Plaza (Video – USCP))
- Exhibit 702 (Defendant on West Plaza (Video – USCP))
- Exhibit 703 (Defendant on West Plaza (Still – USCP))
- Exhibit 704 (Defendant's Proud Boy Helmet (Photo))
- Exhibit 705 (Defendant's Proud Boy Jacket (Photo))
- Exhibit 706 (Jester Scarf (Photo))
- Exhibit 707 (Washington State Militia Membership Page (Photo))
- Exhibit 708.1 (Liberty Tactics Podcast Clip (Joined Proud Boys))
- Exhibit 708.2 (Liberty Tactics Podcast Clip (Walked to Capitol))
- Exhibit 708.3 (Liberty Tactics Podcast Clip (Pushing Barricades))
- Exhibit 709.1 (Sovereign Souls Media Podcast Clip (Proud Boys))
- Exhibit 709.2 (Sovereign Souls Media Podcast Clip (Walk to Capitol Before Speech))
- Exhibit 709.3 (Sovereign Souls Media Podcast Clip (Why J6))
- Exhibit 710.1 (Freedom Unchained Podcast Clip (Joined Proud Boys))
- Exhibit 710.2 (Freedom Unchained Podcast Clip (Appeal of Proud Boys))
- Exhibit 710.3 (Freedom Unchained Podcast Clip (Expected Violence))
- Exhibit 710.4 (Freedom Unchained Podcast Clip (Kettling))
- Exhibit 711 (July 10, 2023 Letter from Defendant to AUSA Michael Gordon)
- Exhibit 803 (Defendant's Facebook Profile)
- Exhibit 804 (Video of Defendant Marching to U.S. Capitol (Facebook))
- Exhibit 805 (Selfie photo of Defendant (Facebook))
- Exhibit 807 (Selfie photo of Defendant in the Senate Gallery (Facebook – OK sign))
- Exhibit 811 (November 10, 2020 Facebook Message)
- Exhibit 812 (December 12, 2020 Facebook Message)
- Exhibit 813 (December 15, 2020 Facebook Post)
- Exhibit 814 (December 18, 2020 Facebook Message)
- Exhibit 815 (January 6, 2021 Facebook Post)
- Exhibit 816 (January 8, 2021 Facebook Message)
- Exhibit 817 (Defendant's Twitter Profile)
- Exhibit 818A (June 27, 2023 Tweet)

- Exhibit 818B (June 27, 2023 Tweet Attachments)
- Exhibit 819 (April 18, 2023 Tweet)
- Exhibit 820 (March 13, 2023 Tweet)
- Exhibit 821 (May 31, 2023 Tweet)
- Exhibit 822 (March 28, 2023 Tweet)
- Exhibit 823 (April 1, 2023 Tweet)
- Exhibit 824 (July 4, 2023 Tweet)
- Exhibit 901 (Picture of Text Messages on Defendant's Phone (re: smiling))
- Exhibit 902 (Picture of Text Messages on Defendant's Phone (re: gas mask))
- Exhibit 903 (Picture of Text Messages on Defendant's Phone (re: gas mask))
- Exhibit 904 (Picture of Text Messages on Defendant's Phone (re: Portland))
- Exhibit 905 (Picture of Text Messages on Defendant's Phone (re: taking a look))
- Exhibit 906 (Picture of Text Messages on Defendant's Phone (re: tribunal))
- Exhibit 907 (Picture of Proud Boy Logo on Defendant's Phone)

*See* United States' Ex. List (Dkt. No. 85).

3.      As set forth herein, the press and the public have a presumptive right of access to the 63 exhibits specified in Paragraph 2 (hereinafter referred to collectively as the "Requested Exhibits") under the common law and the First Amendment, and no countervailing factors justify placing limitations on copying or disseminating the Requested Exhibits.

**<u>INTEREST OF THE APPLICANT</u>**

4.      Applicant National Public Radio, Inc. (NPR) is a non-profit multimedia organization and the leading provider of non-commercial news, information, and entertainment programming to the American public.  NPR's fact-based, independent journalism helps the public stay on top of breaking news, follow the most critical stories of the day, and track complex issues over the long term.  NPR reaches

approximately 42 million people per week on broadcast radio, podcasts, NPR apps, NPR.org, and YouTube content. NPR distributes its radio broadcasts through more than 1,000 non-commercial, independently operated radio stations, licensed to 243 NPR members and numerous other NPR-affiliated entities. NPR is headquartered in Washington, D.C.

5.  NPR continues to cover the January 6, 2021 attack on the United States Capitol and its aftermath, including the prosecutions brought against 1,575 defendants for their actions that day (the "Capitol Cases").

6.  NPR maintains a comprehensive, public database preserving information about the Capitol Cases. *See Jan. 6 Archive: The Capitol Charges*, NPR, https://apps.npr.org/jan-6-archive/database.html (last accessed Apr. 7, 2026). NPR's database and continued reporting rely upon access to judicial records, including evidence submitted by the government in pre-trial, trial, and sentencing proceedings in the Capitol Cases.

7.  In May 2021, NPR joined a coalition of fourteen media organizations in filing a petition in this District for the issuance of a Standing Order to provide a uniform method of prompt access to judicial records in Capitol Cases, including video exhibits. *See generally In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, No. MC 21-46 (BAH), 2021 WL 1946378 (D.D.C. May 14, 2021). The result of that petition was the issuance of Standing Order No. 21-28, a copy of which is attached as Exhibit A to this Application.

8.     Standing Order No. 21-28 required members of the media seeking to access and/or copy video exhibits in Capitol Cases to "file an application, pursuant to D.D.C. LCrR 57.6, to the presiding judge in the case, or if no judge has been assigned, to the Chief Judge, for determination, and the judge may seek the position of the parties." Standing Order No. 21-28 at 5.

9.     Standing Order No. 21-28 directed the Government to utilize a "'drop box' technical solution to make available for viewing the government's video exhibits submitted to the Court in Capitol Cases" upon grant of a media application for access. *Id.* at 6.

10.     Standing Order No. 21-28 further provided that "[n]o recording, copying, downloading, retransmitting or further broadcasting of video exhibits in a particular case is permitted, unless such permission is granted by the presiding judge, who may seek the position of the parties." *Id.*

11.     The USAfx site that was implemented by the Government to share video exhibits in accordance with Standing Order No. 21-28 is no longer being maintained. A hard drive containing the previous contents of the USAfx site was lodged with the Clerk of the Court in June 2025. *See* Notice of Lodging, *In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, No. 21-mc-0046 (June 16, 2025), Dkt. No. 19.

12.     No application for access to the Requested Exhibits in the instant case was previously filed under the procedure specified by Standing Order No. 21-28. Accordingly, the Requested Exhibits are not presently available to NPR.

13.     NPR now seeks access to the Requested Exhibits for use in its reporting and for inclusion in its database concerning Capitol Cases.

## STATEMENT OF FACTS

14.     Defendant Marc Bru ("Defendant") was among those charged in the Capitol Cases for his role in the events of January 6, 2021.  Defendant was alleged to have been "among the first to breach the restricted perimeter on the west side of the Capitol, where he spent nearly two hours verbally and physically confronting overwhelmed and outnumbered police officers," before eventually entering the Capitol building, where he "posed for commemorative and celebratory selfies overlooking the evacuated Senate Floor."  *See* Gov't Sent'g Mem. at 2–3 (Dkt. No. 92).

15.     Following a one-day bench trial held in October 2023, this Court rendered a guilty verdict against Defendant for violating, *inter alia*, 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(B) (Entering and Remaining in the Gallery of Congress); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building); 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building); 18 U.S.C. § 231(a)(3) (Civil Disorder); and 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding).  *See* Judgment (Dkt. No. 98).

16.     Defendant's conviction under 18 U.S.C. § 1512(c)(2) was subsequently vacated, Order (Dkt. No. 103-1), and Defendant was sentenced to concurrent terms of

6

imprisonment on the remaining counts, the longest term being 60 months. Am. Judgment (Dkt. No. 109).

17. At trial, the Government proffered approximately 96 exhibits, including, in relevant part, the 63 Requested Exhibits. *See* United States' Ex. List at 1–5 (Dkt. No. 85).

18. The Requested Exhibits consist of footage from the U.S. Capitol's closed-circuit television surveillance cameras, body-worn camera footage from MPD, and open-source photos and video documenting the attack and Defendant's purported participation in it, *see id.* at 1–3 (100 series, 400 series, 500 series, and 700 series), as well as Defendant's social media posts, text messages, and podcast appearances from the days and weeks leading up to and following the attack, *see id.* at 3–5 (700 series, 800 series, and 900 series).

19. As trial exhibits presented at the bench trial in this matter to show Defendant's guilt and admitted into evidence, the Requested Exhibits played a significant role in the "adjudicatory process" that produced his conviction, *see In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1128 (D.C. Cir. 2020) ("[W]hether something is a judicial record depends on the role it plays in the adjudicatory process." (internal quotations omitted)), and thus "are fully encompassed by the presumption in favor of access to judicial records." *See In re Nat. Broad. Co., Inc.*, 653 F.2d 609, 614 (D.C. Cir. 1981) (concluding media coalition's post-trial application to inspect and copy video and audio exhibits admitted at trial should have been granted).

20.     The Requested Exhibits are also subject to a presumptive right of access under the "general right of access to court proceedings and court documents" derived from the First Amendment. *See Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991). The presumptive right of access under the First Amendment attaches to court proceedings and records where "access has historically been available, and serves an important function of monitoring prosecutorial or judicial misconduct." *Id.* at 288. Both factors are satisfied with respect to trial exhibits. "The fact that there is a common law tradition of right of access is an appropriate consideration to take into account when examining the scope of the First Amendment," *see In re Application of New York Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 89 (D.D.C. 2008), and the common law has long created a presumptive right of access to trial exhibits. *See In re Nat. Broad. Co., Inc.*, 653 F.2d at 614. Access to trial exhibits, like access to trials themselves, "enhances both the basic fairness of the criminal [proceeding] and the appearance of fairness so essential to public confidence in the system." *Washington Post*, 935 F.2d at 288 (alteration in original).

21.     Neither the Government nor Defendant can rebut the presumption of access to the Requested Exhibits under the analysis of the factors set forth in *United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir. 1980) (discussing common law factors), much less identify a "compelling reason" for overcoming the First Amendment right of access. *See Washington Post*, 935 F.2d at 288 (right of access "may be overcome only by an overriding interest based on findings that closure is essential to

preserve higher values and is narrowly tailored to serve that interest") (quoting *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 510 (1984)).[1]

22.    The public has an extraordinary interest in accessing the Requested Exhibits.  The events of January 6 are "of deep national importance and public interest both as to the offense conduct and individuals involved, and the efforts of federal law enforcement agents, prosecutors and the courts in handling the cases arising out the events on January 6th." *United States v. Jackson*, No. CR 21-MJ-115, 2021 WL 1026127, at \*6 (D.D.C. Mar. 17, 2021).

23.    No countervailing interest could conceivably be identified that would outweigh the public's right to access "what has already been publicly viewed and heard in court," and "what the [trier of fact] evidently considered to be weighty evidence of criminal misconduct." *In re Nat. Broad. Co., Inc.*, 653 F.2d at 619.

24.    On January 20, 2025, while Defendant was serving his sentence of imprisonment, *see* Am. Judgment (Dkt. No. 109), and while his appeal of the judgment against him remained pending, *see United States v. Bru*, No. 24-3187 (D.C. Cir. Dec. 19, 2024), President Donald Trump issued a proclamation granting "a full, complete

---

[1]    If this Court ultimately concludes that the common law right of access provides Applicant with the relief it seeks herein, it need not reach the question of whether the First Amendment right of access would also apply.  *See In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1126–27 (D.C. Cir. 2020) ("In light of the result we reach with respect to the common law, we avoid unnecessarily passing on a constitutional question of first impression in this circuit.").  However, the "different and heightened protections of access that the first amendment provides over common law rights" would require reaching the constitutional question in the event the Court were to determine that the common law balancing test did not favor release here. *Cf. Washington Post*, 935 F.2d at 288 n.7 (reaching constitutional issue even where common law right of access attached).

and unconditional pardon" to "individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025).

25.    As a result, the judgment against Defendant was vacated and the case was dismissed as moot. *See* Order (Dkt. No. 114-1).

26.    The public's interest in accessing the Requested Exhibits is only heightened by Defendant's pardon. The effect of Defendant's pardon is not that he is adjudicated "innocent" of the crimes he was previously convicted of, but that the efficacy of the "verdict against [him] remains only an unanswered question" that will "never again be tried." *United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001). Because the Requested Exhibits are judicial records underlying Defendant's previous conviction, the public maintains a significant interest in accessing them not just to evaluate the efficacy of the judicial proceedings that produced that conviction, but the wisdom of his pardon.

27.    There is also no conceivable interest in preventing NPR from copying and disseminating the Requested Exhibits. The common law right of access ordinarily includes the "right to inspect and copy," *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)), and there is no reason to depart from that rule here. Even in an ordinary case, "[r]ebroadcasting evidence already shown at trial may present little risk of juror taint," *In re Press & Pub. Access to Video Exhibits in Capitol Riot Cases*, 2021 WL 1946378, at *5, and here, Defendant's pardon has entirely eliminated

the risk of any future re-trial.  There is accordingly no risk of prejudice to Defendant in granting the instant Application.

<h2 align="center">PRAYER FOR RELIEF</h2>

28.    Because the Requested Exhibits are judicial records subject to an unrebutted presumption of public access under the common law and the First Amendment, NPR respectfully requests that the Court grant the foregoing Application, order the Government to provide NPR copies of the Requested Exhibits, and allow NPR to disseminate copies of the same.

29.    In the event either the Government or Defendant objects to the relief requested herein, NPR respectfully requests oral argument.

30.    NPR seeks any further relief that the Court deems just and proper.

Dated: April 8, 2026

Respectfully submitted,

*/s/ Adam A. Marshall*
Adam A. Marshall
DC Bar No. 1029423
Allyson Veile
DC Bar No. 1766038
REPORTERS COMMITTEE FOR
    FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9308
Facsimile: 202.795.9310
Email: amarshall@rcfp.org
Email: aveile@rcfp.org

*Counsel for Applicant*

## CERTIFICATE OF SERVICE

I, Adam Marshall, hereby certify that on April 8, 2026, a copy of the foregoing

Application was sent to the Clerk's Office via email (dcd_cmecf_cr@dcd.uscourts.gov),

and I caused a copy of the same to be sent via U.S. Mail and email to:

United States Attorney's Office
District of Columbia
Civil Division
601 D Street, NW
Washington, DC 20579
USADC.ServiceCivil@usdoj.gov

Federal Defender Office
District of Alaska
188 W. Northern Lights Boulevard
Suite 700
Anchorage, AK 99503
benjamin_muse@fd.org

Mohammad Ali Hamoudi
Stritmatter Law
3600 15th Avenue West
Ste 300
Seattle, WA 98119
mo@stritmatter.com

Dated: April 8, 2026

Respectfully submitted,

*/s/ Adam A. Marshall*
Adam A. Marshall
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS

*Counsel for Applicant*